Til&hmait C. J.
stating the facts, delivered his After opinion as follows.
So far as concerns Miller, it is clear that he is concluded, because he made the same defence on the scire facias that he offered in this suit. It has been contended indeed, that Miller was not legally a party to the scire facias, and that the court had no power to admit him. But after being admitted, it does not lie in his mouth to say that he ought not to have been. I see no reason however why he might not have been admitted. I presume that Nicholas-Jones the plaintiff1 made no objection to it. It made no difference to him-, whether he contested the matter in that suit, or in an ejectment which he would have been obliged to bring, after he had taken the land in execution, and purchased it at the sheriff's sale. The matter of fraud must have been inquired of *somewhere. It does not appear that the scire facias was served on Miller. That was no reason however, why he having an interest, might not be made a party to the suit. But it is said, that supposing Miller to be concluded, there is no reason why Heller the other defendant should not *61 be permitted to contest the matter. This objection deserves consideration, especially as Heller offered to prove that the matter of fraud had not in fact been gone into on the scire facias. I was at first inclined to think that Heller ought to have been permitted to go into the proof of the fraud ; but on a careful examination, I think the Court of Common Pleas were right in rejecting the evidence. Heller has so connected his defence with Miller, that it is impossible to separate them. Miller has been entered a co-defendant in this suit, no doubt with the approbation of Heller, because Miller has been the active man throughout. It was he who served the notice of the arbitration on the plaintiff, and he entered the appeal from the award of the arbitrators, and gave security to prosecute it. Now how is it possible to admit Heller to give evidence of fraud without Miller taking advantage of it ? They are co-defendants and joint-defendants. Besides, there are other circumstances which satisfy me, that ever since Heller purchased of Miller, and took an indemnifying bond from him, he has trusted the management of the business to him. He suffered him to bring an ejectment in his own name against Mounce Jones, in which a recovery was had, after which Heller was put in possession. In that ejectment the deed from Miller to Heller was concealed. This deed was dated 16th November 1789. The trial on the scire facias was not till six years afterwards; and to suppose that Heller did not know of Miller’s taking defence on the scire facias, is against all probability. If he did know of it he ought to be barred by it. He has no right to expect two trials of the same fact. If he intended to abide by the trial on the defence made by Miller, he should consider his case and Miller’s as the same. On the contrary, if he lay by till Miller’s trial was over, with a view, in case it went against him, to come forward and contest the matter again in his own name, it is a trick which should be discouraged. So that view it how you will there ought not to be a second trial. There is but one circumstance which could make me wish that Heller had been ^permitted to go into the matter of fraud in the Common Pleas, and that is, that he offered to prove that it was not inquired into in the trial on the scire facias. But although I wish the evidence had been received by consent for the satisfaction of the parties, I cannot say that in strict law it ought to have been received; because if Miller, after pleading those matters which were necessary for his defence, neglected to attend the trial or produce his testimony, so that the verdict went against him of course, that is no reason for a new trial. It is better for *62 the public, that the negligent should suffer, than that negligence should be cause for a new trial. Considering therefore the strong evidence produced to the Court of Common Pleas to show that the cause of Miller and of Heller was one and the same, I thiuk they were right in rejecting this evidence.
Ye ates J.
I take it to be an established rule, that the merits of a judgment rendered in a court of competent jurisdiction, while the same remains in full force and uureversed, can never be re-examined or overhauled in another suit. It is founded on the highest reason and sound policy. If a different principle should prevail, legal controversies between parties could never be put at rest. But it is said here, that the judgment entered on the 25 th February 1788, by Nicholas Jones against Mounce Jones, was with a fraudulent view to defeat the claim of George Miller, who had sold the lands in question to Mounce, and was therefore void against Miller, and the now defendant, who claimed under him by deed dated 16th November 1789. To this it is replied, that George Miller acted not only for himself, but as agent of Heller during the different suits which have taken place in pursuance of the entry of this judgment; and consequently that his acts and even omissions preclude the defendants from giving the evidence offered on the trial.
The material facts on this subject are as follow.—[His Honor here stated the facts.] It appears clearly to me that Heller was fully conusant of the pretensions of N. Jones, guarded himself against them as well as he was able, and considered Miller as defending their common interests on the scire facias. When I add to this detail of facts, the circumstances of the sci. returnable to March *on sheriff’s sale to N. Jones was founded, having been returned levied on the lands in possession of Heller, of Miller’s being made co-defendant in the present suit, of the rule agreed on that his son should receive notice of trial after the death of George Miller, and of such son’s appealing from the award of arbitrators entered, at the instance of the defendants below, and giving security to prosecute the appeal, all doubts respecting the agency of George Miller and his son in behalf of Heller vanish from my mind. The scire facias could issue or be served in no other mode than has been practised here. M. Jones confessed the judgment, and was the terretenant of the land, when the scire facias was executed. One term intervened before Miller obtained possession under his ejectment against M. Jones, and he immediately afterwards became a party *63 thereto in the only way it could regularly be done. The defence set up on trial of this cause, was substantially, indeed precisely the same, as had been before contended for by Miller, in his written notice of the special matters meant to be insisted on under the general issue, pursuant to the rule of this Court; with this addition only, that the defendant below “ further offered to give in evidence, that George Miller, senior, was not present at the trial of the scire facias at the Court of Nisi Prius, on the 17th October 1795, and that no inquiry whatever was in fact made or testimony examined on that trial on behalf of Miller, in support of his allegation of the fraud complained of.” The statement of this fact pre-supposes, that if Miller had attended the trial, and the inquiry into the fraud alleged had taken place, Heller would have been bound by the result of the verdict. The principal is bound by the acts of his agent, and the negligence or laches of the latter will be visited on the former. If the trial on the scire facias had been unduly precipitated, if any circumstances of peculiar hardship had occurred, which would have justified the interposition of the court on the return of the postea into banc, the proper remedy would have been by an application to the justice of that tribunal for a new trial; and failing to do so, the party can only impute the injurious consequences to his own mismanagement.
The Court of Common Pleas declared themselves fully *satisfied on the evidence, that Heller and the elder Miller were in fact one and the same party, conjoined in interest, and acting together for their mutual benefit, and that such a community of interest had been established by proof, as would affect Heller with all the proceedings that had operated in court against Miller, and therefore rejected the evidence offered. It is true, it might have been submitted as a fact to be decided on by the jury, whether Heller had been really represented by Miller during the whole controversy, with a special charge, that if they so determined, the evidence should have no influence on their verdict. But such a measure is always attended with danger, and should never be recurred to, unless in a case of very dubious nature.
The evidence forcibly strikes my mind as-a plain case of fact derived from a chain of proof, that there was a privity between Heller and Miller, and I concur with the opinion delivered by the president. As much as I detest fraud in every shape and form, I feel myself bound by imperious rules of settled law under the circumstances of this case, to *64 declare that the Court of Common Pleas were correct in overruling the evidence offered by the plaintiff in error; and upon the whole, I am of opinion, that the judgment of the Court of Common Pleas should be affirmed.
Brackenridge J.
The question here will amount to this: whether on a scire facias at the suit of Nicholas Jones, to revive a judgment against Mounce Jones, a stranger to the judgment, and to the scire facias, conceiving that he has an interest in showing the judgment to be void, can be admitted to show it. I do not see how he could have been admitted, prior to an act of assembly of 4th April 1798, which, directing the service of the scire facias on all concerned that can be found, would seem to give this privilege. The case here, was before that act., The scire facias could not issue but against Mounce. It must pursue the nature of the judgment. Salk. 600. It could not be served on any one but the party to the scire facias. If he could not be found, it must be returned nihil. In the Common Pleas this amounted to a service.
George Miller was a stranger to the scire facias. It is said notice was given to him, and he, George Miller, notice ke would show fraud in the confession of the between the two brothers Nicholas and Mounce. By the attorneys of Mounce there was defence taken, issue joined, trial and verdict for Nicholas.
It is stated that George Miller did not attend and make defence, or that the defence was not made by counsel for him. It does not appear by any entry on the record why he did not. But it is evident that he could not have been admitted to be heard had he attended; and it may be presumed that this was the reason why he did not attend. His counsel could not have but instructed him that he had no right to be heard; and that whatever took place between these two, Nicholas and Mounce, to whose case he was a stranger, it could not affect him. The act of 4th April 1798, as it has introduced new law, will require new entries and new practice. The scire facias here, could have issued no otherwise than to Mounce. It could have made no other a party, Mounce living. It would have been error if it ha.d. Where the scire facias is to make new parties, as where it is to executors, administrators or legal assignees, to say why execution shall not go, it is another matter. No scire facias in a personal action has been ever heard of against other than defendants in the original, actions, while living, or represent *65 atives after decease. It is otherwise in real actions, where there is a change of possession.
Lands in Pennsylvania being assets for the payment of debts, the scire facias must be to the legal representatives, executors or administrators. It is not against the heir or terretenants, as in England. If no administrators, I take it the way has been to get some one to take out letters, against whom the suits may be brought. It is only on a judgment in ejectment that the scire facias goes to the terretenants, the possession being about to be taken against them, though no parties to the ejectment. This when the possession has been changed since the bringing the ejectment.
What right had George Miller, a stranger to judgment and the scire facias, to set up a defence? The judgment is a general lien. Non constat that it will be levied upon the land in his possession. Personal property may be taken, or the person may be taken in satisfaction of the judgment. But because there is a that he take the land, his *demand it is said shall be contested by a and the will of the defendant in the judgment, and in the scire facias ; for the notice stated to be given, is that of a collusion to confess judgment, the judgment in question, Nicholas Jones v. Mounce Jones. The time for the stranger to show this will be, when he comes to be directly affected by it in an ejectment, in consequence of a sale under this judgment. It was in this stage that it toas offered. Nicholas, the judgment creditor, at his own sale takes a deed, and brings ejectment. George Miller the son (the elder now deceased) offered the evidence which was overruled. On what ground was it overruled ? Because there was an appearance to the scire facias, issue joined, verdict, and judgment. The defendant had notice, it is said, and had come forward to offer proof, but desisted. Had he corpe forward, it could not have been received; and apprehending collusion in the original judgment, what could he expect under the proceeding of the scire facias, of which the defend-, ant Mounce Jones must still have the direction in making a defence. But suppose the case to be, that Mounce Jones had told George Miller, use my name, make defence, show the villany in this transaction, and overthrow the judgment if you can; and suppose that George Miller had not at that time been able to make it out, what hinders under an eject-, ment, or new proof discovered, to show the fraud? It is not-a case where the evidence is supposed to be within the knowl-. edge of the party. This is the fallacy.
But what have we to do with notice to George Miller*on *66 the scire facias, or defence made by him, supposing him bound? A stranger might falsify the judgment nevertheless. George Miller was but a judgment creditor, and not in possession of the land, at the time of the scire, facias issued. J. D. Heller under a purchase, was living on the land. If service on a tenant is in question, it ought to have been on him. There is no pretence of service of the scire facias or notice of it to J. D. Heller. In the case of a fine in England, levied, though in strictness a scire facias returned against the cognizee is sufficient, yet for fear of purchasers, and in favor of them, there shall be a scire facias against the terretenant. Salk. 600. In ejectment, the scire facias may either bq general against, all terretenants, *or against the terretenants naming them; but strangers may falsify. They are not estopped, or bound by the judgment. Salk. 60.
But Heller had a bond of indemnity against G. Miller. Does it follow that he may not defend in the first instance? Miller may be insolvent. Heller may prefer the land. On an ejectment against him, he has a right to show that the judgment under which the purchaser at sheriff’s sale claims, was void; and more especially that the purchaser was a party to the fraud. Tie is bound to do it, if his vendor who has given the bond of indemnity insists. He coidd not otherwise recover on his bond. Do we not see, that on the ejectment, George Miller the younger in the room of his father deceased, has on motion been admitted co-defendant in the suit, and for the very purpose of defending against this judgment? And nevertheless the question now is, whether he ought not to have been suffered to have given evidence of the fraud, notwithstanding notice given his father, as is alleged, of the scire facias on the judgment. I lay it down decidedly, that had the father appeared and been admitted co-defendant in the scire facias, and John D. Heller with him, and had they failed in making out the fraud at that time, it was competent for them now to do it. It could be considered but as a breaking of the business then, and not as conclusive. Fraud may be resisted in every stage where advantage of it is about to .be taken, and effect given to the original hatching and contrivance.
Judgment affirmed.
[Cited in 7 S. & R. 41 ; 10 id. 267 ; 11 id. 164; 4 R. 110; 1 P. & W. 158; 2 W. 261 ; 5 id. 298; 2 W. & S. 290 ; 4 Clark, 355. In Martin v. Gernandt, 7 Harris, 129, Gibson, C. J., says, speaking of Heller v. Jones, “the decision in that case can scarce be accounted an authority, since the decision in Mitchell v. Hamilton, 8 Barr, 486, which seems to have received the cordial approbation of the profession.” See also 12 H. 268 ; 1 C. 302 ; 7 S. 118.]